PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* SINDICATO DE OBREROS UNIDOS DEL SUR DE PUERTO RICO, and its UNIÓN LOCAL No. 933, Respondents.

No. JRT-64-17.      Decided March 16, 1965.

*J. B. Fernández Badillo, Solicitor General, Luis M. Rivera Pérez and Marta Ramírez de Vera for petitioner. Santiago C. Soler Favale for respondents.*

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Pursuant to § 9(2)(c) of the Puerto Rico Labor Relations Act (29 L.P.R.A. § 70(2)(c)[1] the Puerto Rico Labor Relations Board has requested this Court to order the respondent Unions to abide by the arbitration award issued by arbitrator Félix R. Aponte Roque on September 30, 1963.

The petition of said Board is based on the facts stated below:

On January 17, 1962 the respondents and Ponce Candy Industries negotiated a collective bargaining agreement effective until January 10, 1964.

---

[1] Said provision reads as follows:

"In order to promote collective bargaining, the Board may, in the exercise of its discretion, aid in the enforcement of arbitration awards issued by competent arbitration agencies, whether designated according to the terms of any collective bargaining contract executed between an employer and a labor organization or by virtue of any agreement signed by a labor organization and an employer. Upon issuance of an arbitration award, the Board may give advice at the request of any party to such award or may, if requested to do so, file in the name of the party so requesting, the proper judicial proceeding in the Supreme Court of Puerto Rico to enforce such award or arbitration."

Complying with the provisions of Article VI of said collective bargaining agreement the Unión Local No. 933 filed a claim for wages[2] with the Grievance Committee in which it stated that the employer "did not comply with Article V of the Collective Agreement in force upon denying the workers covered by the agreement the opportunity to work the 40-hour week comprised between Monday and Friday." Article V of said collective agreement provides that: "The regular workday shall not consist of more than eight (8) hours. Every hour worked in excess of eight (8) hours in any day shall be considered overtime and it shall be paid at double the regular rate. *The workweek comprised between Monday and Friday shall consist of forty (40) hours.* Any work to be performed on Saturday shall be paid at time and a half." (Italics ours.)

When the representatives of both parties failed to reach an agreement before the Grievance Committee the Union requested that an arbitrator be appointed. The Bureau of Conciliation and Arbitration designated Félix R. Aponte Roque who was accepted by both parties.

The following submission agreement, subscribed by both parties, was submitted to the arbitrator.[3]

"To determine whether or not, under Art. V of the existing collective agreement, the workers were offered the opportunity to work from Monday till Friday and receive compensation for

---

[2] We are not in a position to determine whether clause VI of the collective bargaining on Arbitration requires that *all* complaints or claims arising in relation to the provisions of the collective agreement be taken to the Adjustment Committee. Hence, upon deciding the case at bar we part from the premise that this claim concerning work guarantee which entitles the workmen in question to compensation for a 40-hour week irrespective of whether or not they work them in any given week is subject to arbitration.

[3] In the arbitration hearing held November 15, 1963 at the offices of the Ponce Candy Industries, the parties stipulated to submit the case to an arbitrator by means of simultaneous briefs without reply.

The parties agreed not to set a time limit for the arbitrator and to accept his decision as final and binding.

said 40-hour week. In the event that it is determined that said opportunity of a workweek was not offered to them, they shall be paid the compensation they failed to receive until completion of the 40-hour week for the weeks in which .they did not work the 40 hours."

It appears from the Arbitration Award issued on December 30, 1963 that in the opinion of the arbitrator, the company's representative is right. To that effect he states:

"It is stated in the company's brief, without doubt, that the workweek comprised from Monday to Friday does not constitute a work guarantee of 40 hours."

In the same award and specifically in the Decision the arbitrator continues:

"It is decided that pursuant to Art. V of the effective agreement between the Union and the Company, the workers were offered the opportunity to work the workweek from Monday to Friday and receive compensation for said 40-hour workweek *every time that there had been sufficient work available.*" (Italics ours.)

In a complaint for Impeachment of the Arbitration Award filed in the Superior Court, Guayama Part, on September 24, 1964, the complainant Union adduces: ". . . that [the award] does not decide the true controversy submitted to the arbitrator and, on the contrary, decides and analyzes a question which was not submitted to him by the parties . . . ." It is further stated in the complaint that "the award issued in this case is void inasmuch as the arbitrator acted without jurisdiction because he had not been empowered by the submission agreement to pass upon what the arbitration award decides."

We issued two orders on December 18, 1964, one ordering respondent to show cause, if any, why the order requested shall not be issued and the other ordering the Superior Court, Guayama Part, to stay proceedings on the basis of the ruling in *Labor Relations Board* v. *Metropolitan Bus Authority*, 91 P.R.R. 484 (1964).

In the answer to the Order to show cause, filed by the respondent Unions on December 24, 1964, it is maintained in par. 3 thereof, that this Court should not issue the order requested by petitioner on the following ground:

"Because the defendants are not bound to comply with the arbitration award and the same should not become effective because it was issued without jurisdiction and it does not decide the true question in controversy submitted to arbitration, for which reason the award is void at law. (See *Labor Relations Board* v. *N.Y. & P.R. S.S. Co.,* 69 P.R.R. 730 (1949).)"

In their brief in support of their answer to show cause the above allegation is elaborated and it is stated that in the submission agreement it was taken for granted that the workweek from Monday to Friday consisted of 40 hours; that the only question submitted to the arbitrator was whether or not the workers had the opportunity to work said workweek, and otherwise, that payment be ordered of the compensation the worker failed to receive; and that the arbitrator, confronted with this situation, decided that Art. V of the collective agreement did not constitute a work guarantee and that the workers were offered the opportunity to work such workweek every time there was sufficient work available; that in no part of the submission agreement is it submitted to the consideration of the arbitrator, nor is he empowered to decide, the controversy submitted to him on the basis of whether or not there was sufficient work available; that "the submission agreement does not empower the arbitrator to construe as a question of law, the Collective Bargaining Agreement signed between the parties but on the contrary, it appears from the terms of the submission that the 40-hour workweek is compulsory and mandatory."

Petitioner maintains that the award lacks the nullity causes enumerated in *N.Y. & P.R. S.S. Co., supra* and hence, it should be enforced by the Court. To that effect it alleges that:

1. "The parties 'defined the scope of the agency, or jurisdiction vested in the arbitrator to issue the award' throughout the collective and the submission agreements."

2. ". . . the arbitrator's authority regarding his criterion or interpretation of submission that he should have applied upon deciding the controversy submitted to him, was not expressly conditioned."

3. ". . . the arbitrator could not decide the submission without passing judgment on the phrase 'workweek' inasmuch as: it was contained in the submission but neither the agreement, the submission, nor the evidence submitted by the parties in the arbitration proceeding shows that the parties agreed on the meaning of said term."[4]

4. "From the foregoing, the petitioner infers that respondents are at this moment estopped from alleging that they did not authorize the arbitration to interpret the term 'workweek' and that the arbitrator used a criterion which on the basis of the evidence introduced and of the jurisdiction vested in him . . . he could use, the arbitrator did not decide any question whatsoever extraneous to the submission of the parties."[5]

In order to consider and decide the controversy in the case at bar we must summarize and apply the doctrine concerning the concept and mechanism—dynamic—of arbitration of labor-management controversies, which we have established and repeatedly held in several cases we hereinafter mention:

1. The filing in this Court of a petition to enforce an arbitration award entered by virtue of a collective bargaining agreement which the employer [or the Union] agreed to accept but did not accept is a matter which the Legislature left to the judgment of the Labor Relations Board. Once the Board takes the administrative decision of filing such litigation, this Court

---

[4] The Board argues that the argument or brief of each party regarding the case proves that the controversy existing between them and which brought about the arbitration which resulted in the award, was precisely said term pursuant to Art. V of the agreement.

[5] The Board states "that in reaching his decision, the arbitrator could not, according to the wording of the submission, make any decision whatsoever concerning compensation to employees until completion of 40 hours weekly of work."

shall not substitute its views for those of the Board regarding such decision. *Labor Relations Board* v. *N.Y. & P.R. S.S. Co., supra,* page 743.

2. An arbitrator's award issued by virtue of a collective bargaining agreement which both the employer and the employees have agreed to comply with is neither a contract nor a judgment, but it partakes of the nature of both. *Ibid,* p. 745.

3. An award based on a voluntary submission may only be impeached by:

    a) fraud

    b) misconduct

    c) lack of due process in the conduct of the hearing

    d) violation of public policy

    e) lack of jurisdiction

    f) want of entirety. *Ibid.* p. 746.

In the absence of any of these elements, this Court lacks the authority to set aside the award for mere errors of judgment either as to the law or as to the facts.[6] *Labor Relations Board* v. *Cooperativa Cafeteros,* 89 P.R.R. 487 (1963); *P.R. Labor Rel. Board* v. *Orange Crush of P.R.,* 80 P.R.R. 281 (1958); *Labor Relations Board* v. *N.Y. & P.R. S.S. Co., supra,* p. 746.

4. An employer and its employees who in a collective bargaining agreement have agreed to accept arbitration awards issued by virtue of such agreement, substitute the arbitrator for the courts for the determination of all questions of fact and substantive law, thus waiving their rights to litigate in the courts the questions properly submitted to arbitration. Under such circumstances there is no legal way by which the courts can relieve the parties of their agreement. *López* v. *Destilería Serrallés,* 90 P.R.R. 241 (1964); *Labor Relations Board* v. *Caribbean Container Company,* 89 P.R.R. 726 (1964); *Pérez* v. *Water Resources Authority,* 87 P.R.R. 110 (1963); *Seafarers Int'l Union* v. *Superior Court,* 86 P.R.R. 762 (1962); *Rivera* v. *Land Authority,* 83 P.R.R. 251 (1961); *Labor Relations Board* v. *Soc. Mario Mercado e Hijos,* 74 P.R.R. 376 (1953); *Labor Relations Board* v. *N.Y. & P.R. S.S. Co., supra.*

---

    [6] In *Labor Relations Board* v. *Compañía Popular,* 69 P.R.R. 723 (1949), a situation which aróse pursuant to an arbitration award is construed in the light of subsections (b) and (c) of paragraph 3, *supra.*

5. It is only when the collective bargaining agreement, the submission to arbitration, or a statute provide that the Arbitration Committee must decide according to law, that the arbitrators must follow rules of law and make their award in accordance with the prevailing legal doctrines. If the collective agreement is silent in that respect, the arbitrators may declare what law governs and no award thus issued shall be subject to annulment because of legal errors. *Labor Relations Board* v. *Cooperativa Cafeteros, supra; Pérez* v. *Water Resources Authority, supra; P.R. Labor Rel. Board* v. *Orange Crush of P.R., supra; Labor Relations Board* v. *N.Y. & P.R. S.S. Co., supra.*

6. Where neither the collective bargaining agreement nor the submission to arbitration restrict the powers of the Arbitration Committee but rather give it unfettered powers, and it is provided that its award shall be final and binding, this Court, in a proceeding to enforce the arbitration award, cannot refuse to enforce it because of the Committee's alleged errors of substantive law. *Labor Relations Board* v. *N.Y. & P.R. S.S. Co., supra.*

7. When a question is submitted to arbitration according to a collective agreement providing that the award shall be final and binding, unless the parties agree thereto, the Arbitration Committee does not determine its own jurisdiction. It is for the courts and not the arbitrators to construe the agreement of submission to arbitration in order to determine what questions the parties submitted to arbitration to avoid the resolution of questions not submitted to arbitration. *Ibid.* p. 748.

8. The fact that an award is partly void does not necessarily vitiate the entire award. In such a case, the valid portion could be enforced, provided the award is severable. *Ibid.* p. 751.

9. Since an arbitration award which is final and binding for the parties ends the controversies between said parties without the intervention of the courts, except to enforce it, such award shall on its own definitively decide all questions submitted, without modification or explanation whatsoever, by the courts. *Ibid.* pp. 751–52.

10. The fact that there is need to make some simple mathematical calculations following a formula stated by the parties in the agreement does not preclude this Court from ordering compliance with an award which is complete and in which the

arbitrator limited himself to deciding the question submitted to him. *Labor Relations Board* v. *Cross Construction Corp.*, 89 P.R.R. 747 (1964).

11. An employer or a union which voluntarily has agreed to arbitrate its differences and in which the award is final and binding, cannot relitigate in court the issues decided by the arbitrators. In that case the court must leave the award as it finds it and require the parties to comply with it but not interpret it. *Labor Relations Board* v. *N.Y. & P.R. S.S. Co., supra.* In *López* v. *Destilería Serrallés, supra*, this rule is reiterated and the following is added: "It is well to add at this time that the same rule applies to members of the union; otherwise the justice which that rule purports to make would be illusory."

12. The voluntary submission by an employer and a union to arbitration of a controversy under the express terms of a collective agreement binds a worker who is a member of a union to personally oppose to the submission of said controversy. *Rivera* v. *Land Authority, supra.*

13. Collective bargaining agreements are clothed with public interest. *Labor Relations Board* v. *Caribbean Container Company, supra*; *Pérez* v. *Water Resources Authority, supra.*

14. Arbitration agreements should be strictly enforced if submission is clear and free from ambiguity. *Cf. Labor Relations Board* v. *Executive House, Inc.*, 91 P.R.R. 775 (1965); *Seafarers Int'l Union* v. *Superior Court, supra.*

15. In the absence of an express restriction the arbitrator has power to modify the penalty imposed by the employer when he considered it too severe and drastic. *Labor Relations Board* v. *Cooperativa Cafeteros, supra.*[7]

In view of the foregoing we conclude that petitioner is right and that, therefore, we should order the respondent unions to comply with the arbitration award in question. The grounds for our decision are stated below.

---

[7] See also the following cases: *Labor Relations Board* v. *P.R. Telephone Co.*, 91 P.R.R. 883 (1965); *Labor Relations Board* v. *Orange Crush*, 86 P.R.R. 618 (1962); *P.R. Labor Rel. Board* v. *Corona Brewing Corp.*, 83 P.R.R. 40 (1961); *Labor Relations Board* v. *Long Const. Co.*, 73 P.R.R. 242 (1952); *Labor Relations Board* v. *Escambrón Beach Club*, 70 P.R.R. 44 (1949); *Labor Relations Board* v. *Eastern Sugar*, 69 P.R.R. 763 (1949).

The controversy which gives rise to this action starts with a complaint which the respondent Union filed with the Grievance Committee created by said agreement to the effect that the employer denied the workers covered by the aforesaid agreement the opportunity of working 40 hours a week and of being compensated for the weeks during which they did not work 40 hours. This actually meant that the Union understood that Art. V of the agreement constituted a guarantee of 40 hours of work weekly. The employer understood it did not and, realizing they were unable to see eye to eye regarding this question, they agreed to submit the controversy to an arbitrator accepted by both parties for a final decision. We must, therefore, keep well in mind the nature of this controversy when considering the vague language and not so clear terms as might be desirable of the submission. It should be noted that the arbitrator is requested to determine "whether or not, *under Art. V of the existing collective agreement*, the workers were offered the opportunity to work from Monday till Friday and receive compensation for said 40-hour week." (Italics ours.) To that respect the arbitrator had necessarily to determine whether the aforementioned Art. V guaranteed 40 hours of work weekly. In his award he agreed with the employer in that the provision in question does not constitute such guarantee; that other clauses in the agreement provide several different guarantees of work. The arbitrator having decided that Art. V did not provide such guarantee he had to make a determination regarding compensation not received. He made such determination in the sense that all workers had the opportunity "to earn wages for said 40 hours of work every time there was sufficient work available." As the Solicitor General states ". . . the arbitrator could not decide the submission without passing on the phrase 'workweek' inasmuch as it was contained in the submission but neither the agreement, the submission, nor the evidence submitted by the parties in the arbitration proceed-

ing shows that the parties agreed on the meaning of said term. On the contrary, the argument or brief of each party regarding the case shows that the controversy existing between them and which gave rise to the arbitration proceeding which resulted in the award, was precisely said term pursuant to Art. V of the agreement effective at that time."

The position assumed by the respondent union, to the effect that the submission was limited to determining whether or not the workers had the opportunity to work a 40-hour week and if they did not have such opportunity to be paid the amount they failed to earn, actually disregards the nature of the controversy which gave rise to the arbitration or it seeks to allege that by a virtue of a submission to arbitration couched in inaccurate and vague terms, the employer has accepted the Union's contention in the sense that Art. V of the agreement provides a work guarantee of 40 hours weekly. If the Union were right, the submission itself would have decided the controversy in its favor; the arbitrator would have been unnecessary and useless and the submission would have actually constituted an amendment to the agreement so as to include therein the work guarantee of 40 hours not originally agreed upon. Such allegation is clearly unacceptable as illogical and absurd.

We must conclude, therefore, that in this case the arbitrator decided the whole controversy submitted to him for arbitration and not something different from that submitted to him by both parties. It has not been established in this case, nor may the award in question be impeached by fraud, that there was misconduct, lack of due process in the conduct of the hearing, violation of public policy, or lack of jurisdiction. Therefore, we should not interfere with said award except to enforce it.

By reason thereof the judgment will be entered ordering the respondent Union to comply with the award issued by arbitrator Félix R. Aponte Roque on December 30, 1963.